MICHAEL J. McNULTY, Judge Pro Tern.
This is a products liability action before the Court on a suspensive appeal perfected by defendants-appellants, CIBA-GEIGY CORPORATION and RENS PLASTICS COMPANY. Defendants-Appellants filed a peremptory exception of prescription in this Court. Although the accident occurred on May 19, 1980, suit was not filed until June 12, 1981.
A peremptory exception of prescription may be filed in the Court of Appeal by a formal pleading filed prior to the submission of the case for decision so long as the factual bases for the exception are supported by evidence contained in the record on appeal. Louisiana Code of Civil Procedure Article 2163. In re Ponchatalawa, Inc., 428 So.2d 993 (La.App. 1st Cir.1983); Payne v. Trichel, 397 So.2d 16 (La.App. 3rd Cir.1981); City of New Orleans v. DiBenedetto, 144 So.2d 558 (La.App. 4th Cir.1962). Defendants-Appellants have successfully vaulted this hurdle.
It has been held that since Article 2163 is drafted in permissive language, consideration of the exception filed in the first instance in the Court of Appeal is discretionary with the Court. Gulotta v. Cutshaw, 283 So.2d 482 (La.1973). Courts of Appeal, however, are not permitted to arbitrarily decline to consider the peremptory exception when filed for the first time in the Court of Appeal when the record clearly shows that the action has prescribed. Haynes v. Davis, 356 So.2d 465 (La.App. 1st Cir.1977).
Here the criteria in Article 2163 have been satisfied and sound discretion requires that the exception be considered by this Court.
This organ of the Court can little improve upon the scholarly and well-written statement of the law and the facts contained in defendants-appellants’ brief in support of the exception. Certain editorial liberties have been taken so that the same might conform to a proper appellate decision, but otherwise we are pleased to reproduce the following portion of his brief as our findings and holdings in this case.
“In the paradigm tort situation, there is little difficulty in pinpointing the precise moment at which prescription begins to run. The injury is an obvious physical trauma that is immediately inflicted by a single, readily identifiable, and relatively cataclysmic tort. Thus, the general rule is that prescription begins to run on the date of the accident. Wilson v. Hartzman, 373 So.2d 204, (La.App. 4th Cir.1979).
“But not all cases fit that paradigm. Thus, the courts of Louisiana have recognized an exception to the general rule: *659 Where the injuries sustained do not immediately manifest themselves, prescription will begin to run from the date the injured plaintiff knew, or reasonably should have known, of the tort and the resulting injury. Wilson v. Hartzman, supra, 373 So.2d at 205; Marcel v. Hospital Corp., Srs. of Saint Joseph, 322 So.2d 302, (La.App. 1st Cir.1975); Hunter v. Sisters of Charity, 236 So.2d 565 (La.App. 1st Cir.1970); Nivens v. Signal Oil & Gas Co., Inc., 520 F.2d 1019 (5th Cir.1975); R.J. Reynolds Tobacco Co. v. Hudson, 314 So.2d 776, [sic 314 F.2d 776] (5th Cir.1963).
“In these cases, it is the injured plaintiffs reasonable and nonnegligent ignorance of the basic facts necessary to the assertion of his claim that defers the running of prescription. E.g., Cartwright v. Chrysler Corp., 232 So.2d 285, 287 (La.1970); Marcel v. Hospital Corp., Srs. of Saint Joseph, supra, 322 So.2d at 304.
“But mere ignorance is not carte blanche to evade the strictures of liberative prescription.
“An injured plaintiff must exercise reasonable diligence in ascertaining the facts necessary to the assertion of his claim. E.g., Dean v. Hercules, Inc., 328 So.2d 69, (La.1976). Actual knowledge of those facts is not required:
‘The rule that prescription does not run against one who is ignorant of the existence of facts that would entitle him to bring suit, applies only where such ignorance is not wilful and does not result from negligence ... Also, it is not necessary that the party have actual knowledge of the conditions as long as there is “constructive notice.” Whatever is notice enough to excite attention and put the owner on his guard and call for inquiry is tantamount to knowledge or notice of every thing to which inquiry may lead and such information or knowledge as ought to reasonably put the owner on inquiry is sufficient to start the running of prescription.’
Cartwright v. Chrysler Corp., supra, 232 So.2d at 287. Accord, Yarbrough v. Louisiana Cement Co., Inc., 370 So.2d 602 (La.App. 4th Cir.1979); Duhon v. Saloom, 323 So.2d 202. (La.App. 3rd Cir.1976); Marcel v. Hospital Corp., Srs. of Saint Joseph, supra, 322 So.2d at 304; Nivens v. Signal Oil & Gas Co., Inc., supra, 530 F.2d at 1023.
“The reasonable ignorance of injury that is sufficient to defer the commencement of prescription can be found only where there is an absolute lack of any physical manifestation of the injury at the time the accident occurs. See Lay v. University of New Orleans Lakefront, 451 So.2d 1269, 1270-71 (La.App. 4th Cir.1984) (concurrence); Duhon v. Saloom, supra, 323 So.2d at 206; Lucas v. Commercial Union Ins. Co., 198 So.2d 560, (La.App. 1st Cir.1967). Mere unawareness of the seriousness or the full extent of the injury will not suffice. Lay v. University of New Orleans Lakefront, supra, 451 So.2d at 1270-71; Yarbrough v. Louisiana Cement Co., supra, 370 So.2d at 604; Christian v. Daniell Battery Mfg. Co., Inc., 279 So.2d 214, (La.App. 2nd Cir.1973); Lucas v. Commercial Union Ins. Co., supra, 198 So.2d at 563-68. Nor will the lack of an express medical opinion as to the causal relationship between the injury and the tortious conduct. Hunter v. Sisters of Charity, supra, 236 So.2d at 568.
“At bottom, whenever the injured party is, or should be, aware of the incident precipitating his injury, and the injury has manifested itself through physical symptoms, the running of prescription will commence.
“The plaintiff-appellee in this case had actual knowledge of the accidental spill which exposed him to the allegedly offending chemicals, and of the physical onset of his adverse dermatological reaction to that exposure, within twenty-four hours of May 19, 1980. He testified to that effect at trial. Testimony of Elliott Beauclair, 2 Record 342, 441-42, 442-43. He reported the accident and injury to his employer on May 27, 1980, noting the date of accident and injury, describing the injury immediately sustained, and identifying the alleged chemical culprit. Exhibit P-7 (in globo) (first accident report). He described this same sequence of events in his answers to interrogatories propounded to him by the *660 defendants-appellants, Answers to Interrogatories, Nos. 53, 55, 59, 1 Record 68, 77-78, and in the history given to his treating physician, Deposition of Dr. Ingrish, Exhibit P-2A, p. 5 (Oct. 13, 1983); Deposition of Dr. Ingrish, Exhibit P-2, p. 20 (Sept. 14, 1984). And, on the basis of this evidence, the court below expressly found that the accident and injury complained of by the plaintiff-appellee occurred ‘[d]uring the month of May, 1980.’ Opinion, 1 Record 207, 207.
“It is of no avail to the plaintiff-appellee that he may not have known of the alleged permanency of his injury, see Christian v. Daniell Battery Mfg. Co., Inc., supra, 270 So.2d at 215; that he may not have been aware of its full extent or seriousness, see Lay v. University of New Orleans Lakefront, supra, 451 So.2d at 1270-71; or that he may not have had a medical opinion on causation, see Hunter v. Sisters of Charity, supra, 236 So.2d at 568.
“He knew on May 19, 1980 that he had spilled the chemicals on his hands. He knew on May 19, 1980 what those chemicals were, and who had manufactured them. And he knew, within twenty-four hours of May 19, 1980 that he had suffered an adverse dermatalogical reaction as a result of that spill.
“No greater knowledge is required to commence the running of the prescriptive clock.”
Plaintiff-Appellee argues that since this is a products liability case, based upon defendants-appellants’ failure to warn plaintiff-appellee of the dangerous propensities of the chemicals with which he was dealing, and further that since, as testified to by the expert medical witnesses, plaintiff-appellee's injuries resulted from a sensitization of his skin caused by repeated exposure to the chemicals in question, the incident of May 19, 1980 may not be considered as the “tortious act” sued upon. He also argues that he was exposed subsequent to May 19, 1980. With this view we disagree. The record abundantly shows that after the spill of May 19, 1980, there was an almost immediate and palpable injury in the form of a rash. Although the severity of the rash may have wained during treatment, it was still present at the time of trial, and never disappeared. More importantly, he had suffered from no rash or skin problems whatever prior to the date in question. Plaintiff-Appellee’s injuries were immediately apparent on May 19, 1980, although he may not have known at that time that those injuries were to persist for a long period of time thereafter.
The fact that plaintiff-appellee has characterized his action as one in the nature of a continuing tort, cannot prevail over the clear fact that more than one year elapsed from the outward manifestation of his injury and the date that he filed his suit for damages.
The peremptory exception of prescription is therefore maintained, the judgment of the trial court is reversed and plaintiff-ap-pellee’s claims are dismissed at his cost.
REVERSED.
FORET, J., concurs in the result.